UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA GRACE,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>RE/MAX HOLDINGS, INC., et al.,<br><br>　　　　Defendants. | Case No. 23-cv-06352-HSG<br><br>**ORDER GRANTING DEFENDANT BAY AREA REAL ESTATE INFORMATION SERVICES INC.'S MOTION TO DISMISS, GRANTING IN PART AND DENYING IN PART CERTAIN RELEASED DEFENDANTS' MOTION TO STAY, AND DENYING DEFENDANT WINDERMERE'S MOTION FOR JOINDER**<br><br>Re: Dkt. Nos. 127, 138, 139 |

Pending before the Court are two motions: a motion to dismiss brought by Defendant Bay Area Real Estate Information Services, Inc. ("BAREIS"), Dkt. No. 127, and a motion to stay brought by Certain Released Defendants and joined by Windermere Real Estate Services Company, Inc. ("Windermere"), Dkt. Nos. 138, 139. The Court heard argument on the motion to dismiss on May 23, 2024, Dkt. No. 173, and, having determined that the motion to stay is appropriate for disposition without oral argument, deems that matter submitted. *See* Civil L.R. 7-1(b). For the reasons discussed below, the Court **GRANTS** BAREIS's motion to dismiss, **GRANTS IN PART and DENIES IN PART** the Certain Released Defendants' motion to stay, and **DENIES** Windermere's motion for joinder.

**I.   BACKGROUND**

On December 8, 2023, Plaintiff Christina Grace ("Plaintiff") filed a class action complaint against the National Association of Realtors ("NAR"), BAREIS, and other real estate defendants, alleging that they unlawfully restrained trade by forcing home sellers to bear the cost of buyer broker fees. Dkt. No. 1. On January 12, 2024, Plaintiff filed an amended complaint. Dkt. No. 33

("AC"). The AC drops NAR as a defendant, but names (1) BAREIS (a multiple listing service, or "MLS," operating in Marin, Mendocino, Napa, Solano, and Sonoma counties), (2) Vanguard Properties, Inc., Twin Oaks Real Estate Inc., Windermere Real Estate Services Company Inc., Rapisarda & Fox, Inc., Realty ONE Group, Inc., Compass, Inc., eXp World Holdings, Inc., Keller Williams Realty, Inc., Anywhere Real Estate Inc., and RE/MAX Holdings, Inc. (the "Brokerage Defendants"), and the (3) Marin Association of REALTORS®, North Bay Association of REALTORS®, Northern Solano County Association of REALTORS®, and Solano Association of REALTORS®, Inc. (the "Realtor Defendants") (collectively, "Defendants"). Plaintiff's suit takes aim at what the complaint alleges is the prevailing compensation scheme for buyers' brokers: instead of home buyers and home sellers bearing the respective costs of their own real estate brokers, sellers generally bear the cost of *both* broker's commissions (which typically total between 5-6% of the sale price). AC ¶¶ 11, 12. Plaintiff alleges that that this scheme unfairly forces sellers to pay inflated commissions to buyers' agents, and wrongly motivates buyers' agents to steer their clients towards listings where they will make a greater margin. AC ¶¶ 10, 18, 20.

Plaintiff alleges that two rules promulgated by BAREIS – Rules 11.2 and 11.5 – give rise to this allegedly anticompetitive arrangement. By agreeing to "adopt, implement, and enforce" these two rules, Plaintiff pleads that Defendants "participated in a conspiracy to restrain trade by requiring Class members to pay the broker representing the buyer of their homes, and to pay inflated commissions." AC ¶ 26. In doing so, Plaintiff alleges that BAREIS and the other Defendants violated Section 1 of the Sherman Act (15 U.S.C. § 1), the California Cartwright Act (Cal. Bus. & Prof. Code §§ 16720, et seq.), the Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, et seq.) and have been unjustly enriched. *Id*. ¶¶ 147–181. On March 21, 2024, BAREIS moved to dismiss Plaintiff's complaint. Dkt. No. 127 ("Mot."). The matter has been fully briefed, *see* Dkt. Nos. 130 ("Opp.") and 164 ("Reply"), and argued.

On April 24, 2024, the Realtor Defendants, Twin Oaks Real Estate, Inc., and Vanguard Properties, Inc. (collectively, "Certain Released Defendants") moved to stay the case in its

1  entirety, or in the alternative, only as to them.[1]  Dkt. No. 138.  Windermere filed a motion for

2  joinder the following day.  Dkt. No. 139.  Animating the request for a stay was the recently

3  announced $418 million nationwide class action NAR settlement which related to virtually

4  identical subject matter and released some Defendants named in this case.  *See* Dkt. No. 138.

5  While Plaintiff and BAREIS opposed staying the case in its entirety, Dkt. Nos. 163, 160, they did

6  not object to the alternatively requested relief of a stay only as to the Certain Released Defendants.

7  The motion is ready for disposition.

## II. DISCUSSION

### A. Motion to Dismiss

BAREIS argues that Plaintiff's complaint must be dismissed because it fails to state a plausible claim.  The Court agrees.

#### i. Legal Standard

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6).  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that

---

[1] For context, these are not the only Defendants pursuing or subject to a stay in this case. Proceedings against Defendants Compass, Inc., Realty ONE Group, Inc., and Rapisarda & Fox, Inc. have already been stayed pending a decision on final approval of the settlements in *Gibson v. National Association of Realtors*, Case No. 4:23-cv-00788 (W.D. Mo.), and *Umpa v. National Association of Realtors*, Case No. 4:23-cv-00945 (W.D. Mo.).  *See* Dkt. No. 149.  And while proceedings as to Defendants RE/MAX Holdings, Inc., Anywhere Real Estate Inc., and Keller Williams Realty, Inc. were also stayed for some time, that stay expired on May 23, 2024.  Those parties have since filed an unopposed motion to stay proceedings as to them pending the expiration of the time to appeal the Final Judgment, or the expiration of any appeals of the Final Approval of the nationwide Class Action Settlements and the accompanying Final Judgment, in *Burnett v. National Association of Realtors*, Case No. 19-cv-00332 ECF No. 1487 (W.D. Mo.).  Dkt. No. 171.  The Court will rule on that motion once Plaintiff has filed a response.

1    the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

2    In reviewing the plausibility of a complaint, courts "accept factual allegations in the
3    complaint as true and construe the pleadings in the light most favorable to the nonmoving party."
4    *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless,
5    courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of
6    fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir.
7    2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

8    Even if the court concludes that a 12(b)(6) motion should be granted, the "court should
9    grant leave to amend even if no request to amend the pleading was made, unless it determines that
10   the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203
11   F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

       **ii.   Analysis**

13   As alleged in the AC, Plaintiff's antitrust theory hinges on what BAREIS Rules 11.2 and
14   11.5 supposedly require.[2] As Plaintiff herself advances, "[t]he gravamen of Plaintiff's complaint
15   is that anti-competitive BAREIS MLS rules, which Defendants agreed to, implemented, and
16   enforced, *require* Class members to make a blanket, unilateral, and effectively non-negotiable
17   offer of buyer broker compensation when listing a property on the BAREIS MLS." AC ¶ 5
18   (emphasis added). Specifically, Plaintiff alleges that Rule 11.2 "requires all Class member home
19   sellers to make a blanket, unilateral and effectively non-negotiable offer of buyer broker
20   compensation." AC ¶ 7, *see also id*. ¶ 87 (Rule 11.2 "forces Class Members to pay a cost that in a
21   competitive market would instead be paid by the buyer"). Similarly, Plaintiff alleges that Rule
22   11.5 "prevents buyers from seeking to reduce their own broker's commission as a condition of a

---

[2] Even though Plaintiff's complaint focuses on Rules 11.2 and 11.5, the Court finds consideration of other rules referenced by BAREIS (such as BAREIS Rules 2, 11.4, and 11.7) proper under the incorporation by reference doctrine, and will **GRANT** BAREIS's request to consider those rules. In this circumstance, where Plaintiff's claims arise out of BAREIS's governing rules, cherry picking only certain of those rules for the Court's consideration is inappropriate. *See Khoja v. Orexigen Therapeutics*, 899 F.3d 988 (9th Cir. 2018). However, in taking judicial notice of other BAREIS rules, the Court does not assume that the cited rules truthfully depict real-world conditions or behaviors, but rather that their contents – the authenticity and accuracy of which are not in dispute – are what BAREIS says they are.

1  purchase offer." *Id*. ¶ 8.

2  But, as BAREIS stresses, there is a disconnect between Plaintiff's characterization of the

3  rules and what they actually say. The relevant rules provide:

> **11.2** *Unilateral Contractual Offer*. By submitting a listing in the MLS Data, the Listing Broker is making a blanket, unilateral contractual offer of compensation, <u>if any</u>, to the other Broker Participants and, through the Broker Participants, other Members, for their service in selling the property. […]
>
> **11.5** *No Change of Compensation as a Condition of Offer*. A Buyer's Broker shall not use the terms of an offer to purchase a listed property that has been executed by or on behalf of a Buyer to secure an agreement to modify the MLS unilateral offer of compensation or the Buyer's Broker's right to receive such compensation from the Listing Broker. A Buyer's Broker also shall not make the submission to the Seller or to the Listing Broker of an executed offer to purchase the subject property contingent on an agreement to modify the offer of, or the right to receive such compensation. The Listing Broker shall not use a change in the terms or conditions of a compliant offer to purchase a listed property that has been submitted to the Listing Broker by a Buyer's Broker to attempt to modify the Listing Broker's unilateral offer of compensation or the Buyer's Broker's right to receive such compensation. Failure of a Buyer's Broker or a Listing Broker to comply with this Rule 11.5 shall not relieve a Listing Broker of the obligation to submit all offers to the Seller as required by California law. Subject to the restrictions set forth in this Section 11.5 or set forth elsewhere in the Rules, neither this Section 11.5 nor any other provision in these Rules, shall preclude a Listing Broker and a Buyer's Broker from freely entering into a mutual agreement to change the subject compensation. BAREIS shall not be a party to the settlement of any dispute over compensation.

Dkt. No. 128-1 (emphasis added). As written, these rules do not *require* what Plaintiff alleges they do. For example, Rule 11.2's reference to a "blanket, unilateral contractual offer of compensation" is modified by "if any." The inclusion of "if any" belies the allegation that "a blanket, unilateral contractual offer of compensation" is mandated by the operation of the Rule itself. If it is *possible* to offer zero dollars, then such an offer is definitionally not required, regardless of whether it is actually made very often.

And while Plaintiff argues that Rule 11.5 "prevents a buyer from seeking" (or, stated differently, requires a buyer not to seek) "to reduce his, her, or their broker's commission by making that reduction a condition of a purchase offer," the language of the Rule does not bear out that characterization. Based on its text, Rule 11.5 appears

5

simply to prevent a buyer's broker from holding their buyer's *signed* offer to purchase a property hostage to increase her own compensation, as it applies where the buyer's offer has *already* been executed.  The rule even specifies that "neither this Section 11.5 nor any other provision in these Rules, shall preclude a Listing Broker and a Buyer's Broker from freely entering into a mutual agreement to change the subject compensation."  The Court has not been directed to any provision of the Rules that prevents the parties from agreeing to allocate the buyer's broker zero dollars in compensation.  Again, the question of whether such an agreement is rarely (if ever) made is a separate matter.

In sum, while it is conceivable that something is at work to maintain the broker compensation scheme in its current form, Plaintiff has not plausibly alleged that the allegedly anticompetitive arrangement flows from the language (rather than real-world enactment) of BAREIS's Rules 11.2 and 11.5.  These Rules simply do not on their face require the results Plaintiff alleges they do.  Accordingly, the Court will **GRANT** Defendant BAREIS's motion to dismiss.  However, since the Court cannot foreclose the possibility that Plaintiff can reframe the allegations or marshal new facts to state a claim for anticompetitive practices, it will grant leave to amend.

### B. Motion to Stay

#### i. Legal Standard

A district court has "broad discretion to stay proceedings," *Clinton v. Jones*, 520 U.S. 681, 706 (1997), and possesses the "inherent power to control the disposition of the causes on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936)).  Courts consider several factors when deciding whether to stay a matter, including hardship and prejudice to the parties, and efficiency and conservation of judicial resources.  *See, e.g.*, *Genetic Techs. Ltd. v. Agilent Techs., Inc.*, No. C 12-01616 RS, 2012 WL 2906571, at *2 (N.D. Cal. July 16, 2012); *see also CMAX*, 300 F.2d at 268 (district courts evaluating whether to grant a stay should weigh "competing interests," including "damage" from a stay, "hardship or inequity" to parties from proceeding without a stay, and

6

whether a stay will "simplify[] or complicat[e]" the case).

In addition, "[a] trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of California*, ltd., 593 F.2d 857, 863 (9th Cir. 1979). To that end, "[c]ourts routinely exercise [their discretionary] power and grant stays when a pending nationwide settlement could impact the claims in the case before them." *Pieterson v. Wells Fargo Bank, N.A.*, No. 17-CV-02306-EDL, 2019 WL 1466963, at *1 (N.D. Cal. Feb. 14, 2019) (citations omitted) (alterations in original); *see also Musgrave v. Hyundai Motor Am., Inc.*, No. 819CV01538JLSJDE, 2020 WL 2495545, at *3 (C.D. Cal. Jan. 8, 2020) (granting stay because "the proposed *In Re: Hyundai* settlement could significantly impact the posture of this case.").

### ii. Analysis

After considering the parties' arguments, the Court in its discretion agrees that a stay of the proceedings as to the Certain Released Defendants is warranted. Staying the case as to these Defendants not only reduces the risk of duplicative litigation and conserves limited judicial resources as urged, but also comports with the Missouri court's preliminary injunction barring putative class members in the NAR action (like Plaintiff) from continuing to litigate against released parties. In short, moving forward with proceedings in this forum against the Certain Released Defendants (i.e. those that have been explicitly released or opted into the NAR settlement) would be at odds with the parties' and Court's interests.

That said, a stay as to the entire action is not justified at this stage. Plaintiff is entitled to continue prosecuting her claims against those Defendants who are not released by the NAR settlement or other nationwide settlements.[3] Admittedly, the number of those Defendants has dwindled. Of all the Defendants Plaintiff brings claims against, only eXp World Holdings, Inc.

---

[3] As noted above, RE/MAX Holdings, Anywhere Real Estate Inc., and Keller Williams Realty, Inc. have moved without opposition for a renewed stay on the basis of a nationwide settlement in *Burnett v. National Association of Realtors*, which purportedly extinguishes Plaintiff's claims against them. Dkt. No. 171. So while proceedings did resume against these Defendants on May 23, 2024, the Court very likely will renew the stay in the near future.

1   ("eXp") has not already entered into a nationwide settlement and is expressly prohibited from

2   participating in the NAR settlement, Dkt. No. 138 at 16, and only BAREIS and Windermere

3   appear not to have yet opted into the NAR settlement – though they still have until June 18 to do

4   so. *See* Dkt. No. 138 at 12 fn. 3, Dkt. No. 167.  The Court does not see a reason to grant a stay

5   that would implicate these three Defendants, since the impact of the NAR settlement (or other

6   nationwide settlements) on Plaintiff's claims against them is uncertain.  If BAREIS or

7   Windermere decide not to opt in, for instance, Plaintiff's claims against them should proceed.  If,

8   on the other hand, they decide to do so, or if eXp joins a nationwide settlement as a released party,

9   these Defendants can either stipulate to a stay or file a motion seeking one.

10   Accordingly, the Court **GRANTS IN PART and DENIES IN PART** Certain Released

11   Defendants' motion to stay, Dkt. No. 138, and **DENIES** Windermere's motion for joinder, Dkt.

12   No. 139.  While the Court will stay proceedings as to the Certain Released Defendants, the case

13   itself will advance.

### III. CONCLUSION

15   The Court **GRANTS** BAREIS's motion to dismiss, Dkt. No. 127, but will permit Plaintiff

16   leave to amend.  Any amended complaint must be filed within 28 days of this order, and must not

17   assert any new claims or name new defendants without leave from the Court.

18   The Court further **GRANTS IN PART and DENIES IN PART** the Certain Released

19   Defendant's motion to stay, Dkt. No. 138, and **DENIES** Windermere's motion for joinder, Dkt.

20   No. 139.  Consistent with that order, the Court hereby **STAYS** proceedings as to the Marin

21   Association of REALTORS®, North Bay Association of REALTORS®, Northern Solano County

22   Association of REALTORS®, Solano Association of REALTORS®, Inc, Twin Oaks Real Estate,

23   Inc., and Vanguard Properties, Inc. until 30 days after the District Court for the Western District of

24   Missouri's ruling on the final approval motion in the NAR action.  The parties are **DIRECTED** to

25   file a joint status report every 90 days regarding the status of the settlement and the anticipated

26   dismissal in this action, and to jointly notify the Court within 48 hours of final approval and entry

27   of judgment in the NAR action.

28   Finally, the Court **ORDERS** Vanguard Properties, Inc. and Twin Oaks Real Estate, Inc., as

8

well as the Realtor Defendants **TO SHOW CAUSE** why Dkt. Nos. 144 (Vanguard and Twin Oaks' motion to dismiss and for joinder) and 145 (Realtor Defendants' motion to dismiss) should not be terminated without prejudice to renewal if the NAR settlement is not approved.  The parties should file a responsive joint statement (no longer than one page in length) by June 4, 2024.

**IT IS SO ORDERED.**

Dated: 5/29/2024

HAYWOOD S. GILLIAM, JR.
United States District Judge